Gilmore, J.
The plaintiff in error here, was the defendant in error in the Common Pleas, and he asks a reversal of the judgment of the Common Pleas reversing the judgment of the justice- of the peace; which judgment of reversal he assigns for error.
The questions are therefore those passed upon by the Common Pleas, and following the order in which they arose on the trial before the justice, are in substance as follows :
First. That the justice of the peace erred in admitting as evidence a certified copy of the probate and record of "the will of Julius Brown, deceased, and holding it to be conclusive evidence of the validity of the will, while proceedings contesting it were pending.
Second. That the justice had no jurisdiction of the case. 1. Because the complaint does not, upon its face, show such a case as gives jurisdiction. 2. Because the evidence does not make a case defined by the statutes of forcible entry and detainer. 3. Because the title to real estate is drawn in question.
In reference to the first assignment of error, the act relating to the jurisdiction of Probate Courts (S. & C. 1212, sec. 2), provides that the Probate Court shall have exclusive jurisdiction “to take the proof of wills.” Sections 15,16, 19, and 22, of the wills act, S. & C. 1618,1619, provide as follows :
Section 15. “If it shall appear that such will was duly attested and executed, and the testator at the time of exe *265 cuting the same was of full age and of sound miud and’ memory, and not under any restraint, the court shall admit the will to probate.”
Section 16. “Every will, when admitted to probate as above mentioned, shall be filed in the office of the probate judge, and .recorded, together with the testimony, by said judge or his clerk, in a book which shall be kept by him for that purpose.”
Section 19. “ If no person interested shall, within two years after probate had, appear and contest the validity of the will, the probate shall be forever binding, saving, however, to infants, married women, and persons absent from the state, or of insane mind, or in captivity, the like period after the respective disabilities are removed.”
And if there is a contest of the will in the mode prescribed by law, then :
Section 22. “ The order of probate shall be prima facie evidence, on the trial of said issue, of the due attestation, execution, and validity of said will.”
These statutory provisions show: 1. That the Probate Court has exclusive jurisdiction to take the proof of wills, admit them to probate, and record them, together with the testimony.
A record thus made in pursuance of these provisions, is the only one authorized or required by law, and without such probating and recording, wills are wholly inoperative in Ohio, for any purpose whatever.
2. That from the time the will is probated and recorded, it is binding and conclusive in every respect, except as evidence against interested persons, who may contest it within the time limited.
3. If no such contest is made by interested persons within the time limited, then it becomes also forever binding upon them, as it had been on all others in the world, from the date of the probate and record.
4. If interested persons, as they may, do contest the will, the probate and record are not thereby annulled, or the force and validity of the will weakened, during the pendency *266 of the proceedings contesting it. It still remains in full force for all purposes, except as evidence on the trial of the issue between the contestants and contestees, where the validity of the will is directly called in question. Even here, and for this purpose, the record is still accompanied by a legal presumption in its favor, for on the trial it is prima fade evidence of the validity of the will; and this presumption attends it until the verdict of a jury against it has been returned, and a proper judicial decree setting it aside has been rendered. Lessees of Swazey’s Heirs v. Blackman and wife, 8 Ohio, 19.
It is true that the contesting of a will in the statutory mode, in the higher courts, is, in effect, a resubmitting of the will for final probate or rejection in those courts, where the jurisdiction is taken for no other purpose ; but it is also true, that on this resubmission, the original probate and record of the will makes a prima fade ease for the contestees, which remains with them till the close of the trial. Mears v. Mears, 15 Ohio St. 90.
It is plain, therefore, that the admissibility of the probate and record of the will, as evidence before the justice, was not affected by the fact that proceedings to contest it were at the time pending in the District Court of Ashtabula county.
The copy of the will offered in evidence complied in every respect with section 17 of the wills act, S. & C. 1618, and was properly admitted by the justice as conclusive evidence of its validity, on the collateral issue then being tried, respecting the disposition of his estate, real and personal, by the testator. S. & C. 1621, sec. 31.
Third. "Was the form of the complaint sufficient to give the justice jurisdiction ?
1. This question was twice before this court while the act-of 1831 was in force. Swan’s Stat. 1841, p. 417.
The first and ninteenth sections of this act have been almost literally re-enacted into sections 125 and 126 of our present law relating to forcible entry and detainer. S. & C. *267 791. The provisions of the two statutes relative to the-question under consideration are precisely the same.
In the ease of Yager v. Wilber, 8 Ohio, 398, the objection made to the complaint was, “ that it did not set forth that Wilber was either a tenant holding over his term, or a judgment debtor in possession, or an occupier without color of title.”
It was contended that section 19 of tbé law as it then stood (section 126 of the present law) having been passed, subsequently, limited the operation of section 1 (the same as section 125 of present law) to cases enumerated in section 19, and hence the objection above stated.
But it was held that section 19 was an amendment to* section 1, and left unimpaired the operation of this latter section upon entries made by actual force, while section 19 brought within its scope a new class of cases, which are not necessarily attended with force. Its ancient office, to-restrain entries or detainer by force, was conferred by section one, and its enlarged operation over three additional cases continued by section 19, and that nothing' contained in section 19 was intended to restrain the powers conferred by section 1. The complaint under examination in this case showed an entry by force, and was held to be sufficient to* give the justice of the peace jurisdiction.
In the case of Barto v. Abbe, 16 Ohio, 408, the objection was precisely the same as in the former case. The court said: “ These objections were made under the assumption that the complaint in this form of action should set forth and describe the facts that would show that the justice of the peace had jurisdiction.” The complaint follows the words: of the statute. This has always been held sufficient. . . It alleges that “ the said O. Barto doth unlawfully, forcibly, and with a strong hand detain from the possession of, etc.,” the lands therein described. The court said: “If the plaintiff in detainer had a cause of action that could be substantiated by proof, this form was sufficient, and if not,, the defendant would defeat him for a failure of proof.” In *268 this case, the plaintiff was a purchaser at judicial sale; the defendant was the judgment debtor in possession.
These cases show'that where the complaint contains the operative words of either the first or second clause of section 125, it will, in this respect, be held good, and give the justice jurisdiction; and under such allegations in the complaint, the plaintiff in detainer may prove any cause of action he may have under either the 125th or 126th section of the law.
The complaint in the case under consideration alleges substantially in the language of the second clause of the 125th section, “that the said Charles "W. Burdick has ever since the 1st day of January, 1870, unlawfully and forcibly detained, and still doth detain from the undersigned, possession of the following premises, etc.” This, according to the precedents above cited, makes the complaint good on its face, and entitled the plaintiff in detainer to the right to prove any case he might have under either section. But in addition tó this, the complaint here does go on to state the very facts of the case, in regard to which he complained of the defendant, so that the latter could not complain that he was not advised of the nature of the plaintiff's claim against him. The complaint is therefore held to be sufficient to give the justice jurisdiction of the cause.
2. Bid the evidence make a case defined by the act of forcible entry and detainer?
The injury of which the plaintiff'in detainer complained was what the common law denominates ouster by abatement, which is, where a person dies seized of an inheritance, and before the heir or devisee enters, a stranger who has no ■right makes an entry and gets possession of the freehold. It is a figurative expression, to denote that the rightful possession of the freehold of the heir or devisee is overthrown by the rude intervention of a stranger, and is always consequent upon the descent or devise of an estate in fee-simple. 3 Bla. Com. 167-169.
The person so entering, was at common law called an *269 abator. Under our statute he may properly be denominated “ an occupier without color of title.”
The testimony, as set forth in the bill of exceptions, throughout is consistent, and shows that after the death of the testator, who was in possession when he died, and before the devisee got possession, the defendant entered into possession as the tenant of some of the heirs at law of the testator, who were not in possession, and who had no right whatever to the estate, for it did not descend, and when the will was probated it related back to the death of the testator, and swept away and rendered null and void any assumed rights of his heirs at law, as against the devisee.
The defendant, therefore, stood in no better position than if he, a stranger, had entered before the devisee, of his own volition, and continued to hold possession without right. He was simply an occupier of the premises without color of title. The evidence established this fact, and made a case under the allegations of the complaint and also under the statute.
3. Was the fact that the plaintiff in detainer had to show his title in order to recover, such a drawing in question of the title to real estate as to deprive the justice of jurisdiction? We think not. Section 126 provides for three classes of cases, in either of which, to entitle the plaintiff to recover in this form of action, it might become necessary to prove his right of possession by proving his title. If, after a lease had been made, and the lessee put into possession, the lessor sold and conveyed the leased premises in fee to another, subject to the lease, and the tenant held over his term, there can be no doubt that the grantee could maintain an action in this form to Recover possession, notwithstanding he would have to prove his title to enable him to do so. A purchaser at judicial sale would have to produce the order of the court confirming the sale under which he claimed, or the sheriff’s deed, to enable him to maintain this action against the judgment debtor in possession. The statute, in these cases, expressly gives the remedy, and must not -be defeated by a rule that would ex- *270 ■elude the only evidence, that would make the remedy effective under the statute.
So, in the caBe of an occupier without color of title, holding against one entitled to the possession. The law-maker, in giving this remedy, must have contemplated a power in the ■courts to make it effective, by allowing the plaintiff in detainer to show his right of possession by proving his title. And, on the other hand, it is equally plain that the occupier would have a right to defeat the plaintiff, on the trial, by showing that he had a colorable title, by any legal testimony that would establish it.
Ve find no error in the rulings and holdings of the justice. The judgment of the Court of Common Pleas, revei’sing the judgment of the justice of the peace, is therefore reversed, and the j udgment of the justice of the peace affirmed.

Judgment accordingly.

McIlvaine, C. J., Welch, White, and Rex, JJ., concurred.